**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
275 Madison Ave., 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
       pkim@rosenlegal.com

Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SETH BURROUGHS, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VINCE HOLDING CORP., BRENDAN L. HOFFMAN, and DAVID STEFKO,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Seth Burroughs ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Vince Holding Corp. ("Vince" or the "Company"), analysts' reports and advisories about the Company, and

1

information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities, other than Defendants, who purchased or otherwise acquired the publicly traded securities of Vince between December 8, 2016 and April 27, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4. Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying Certification, purchased and/or acquired Vince securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7. Defendant Vince engages in the design, merchandise, and sale of various luxury brand products in the United States and internationally. The Company is incorporated in Delaware and its principal executive offices are located at 500 5th Avenue—20th Floor, New York, New York 10110. The Company's common stock is traded on the New York Stock Exchange ("NYSE") under the ticker symbol "VNCE."

8. Defendant Brendan L. Hoffman ("Hoffman") has been Chief Executive Officer ("CEO") of Vince since October 2015.

9. Defendant David Stefko ("Stefko") has been the Chief Financial Officer ("CFO") of Vince Holding since January 14, 2016 and its Executive Vice President since September 20, 2016.

10. Defendants Hoffman and Stefko are sometimes referred to herein as the "Individual Defendants."

11. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

12. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

14. The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

15. In connection with the consummation of the Company's Initial Public Offering ("IPO") on November 27, 2013, Vince, LLC entered into a Shared Services Agreement with Kellwood Company (the "Shared Services Agreement"), pursuant to which Kellwood Company would provide support services in various areas, including, among other things, certain accounting functions, tax, e-commerce operations, distribution, logistics, information

technology, accounts payable, credit and collections and payroll and benefits administration. Since the IPO, Vince has been working on transitioning certain functions performed by Kellwood Company under the Shared Services Agreement (the "Kellwood transition").

## Materially False and Misleading Statements

16. On December 8, 2016, the Company filed a Form 10-Q for the quarter ended October 29, 2016 (the "3Q 2016 10-Q") with the SEC, which provided the Company's third quarter 2016 financial results and position. The 3Q 2016 10-Q was signed by Defendant Stefko. The 3Q 2016 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Hoffman and Stefko attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

17. The 3Q 2016 10-Q discussed the progress of the Kellwood transition and the transition of Vince's enterprise resource planning ("ERP") and supporting systems and related IT support services, stating in pertinent part:

> Functions that have transitioned to the Company, including its outsource service providers, include certain accounting related functions, e-commerce customer service, distribution and logistics, payroll and benefits administration and information technology support for systems that have been implemented. Additionally, to date, the Company has completed the implementation of its own point-of-sale system, third party e-commerce platform, human resource recruitment system, distribution applications, and network infrastructure. **The Company is currently in the process of transitioning the remainder of the Kellwood systems and services, including tax, accounts payable, credit and collections, as well as its own enterprise resource planning ("ERP") and supporting systems and related IT support services.**
>
> \*   \*   \*
>
> The following is a summary of highlights during the three months ended October 29, 2016:…(iii) the transition of information technology systems and infrastructure in-house from Kellwood;

5

* * *

***Kellwood has provided us with certain key services for our business since the IPO. We have substantially completed the transition of some of such services to our own systems or processes, and are in the process of transitioning the rest of the services to internal and external resources. If we cannot successfully implement the necessary new systems, processes and functions, or complete the transition of the remaining services from Kellwood, our business, financial condition, results of operations and cash flows could be materially harmed.***

Since the IPO and Restructuring Transactions, we have relied on certain administrative and operational support functions and systems of Kellwood to run our business pursuant to a Shared Services Agreement (the "Shared Services Agreement"), dated November 27, 2013, by and between Kellwood and us. To date, we have completed the implementation of our own point-of-sale system, third party e-commerce platform, human resource recruitment system, distribution applications, and network infrastructure. The new systems we have recently implemented may not, initially or at all, operate as successfully as the systems we historically used as such systems were highly customized or proprietary. Moreover, the processes and functions that were transitioned to our internal capabilities may not achieve the appropriate levels of operational efficiency in a timely manner, or at all. In addition, we have transitioned certain support services, including e-commerce operations, distribution, logistics, accounting, payroll, benefits administration, and information technology support for our systems implemented to either internal or external resources. We are currently in the process of transitioning the remainder of the Kellwood systems and services, including tax, accounts payable, credit and collections, as well as our own enterprise resource planning ("ERP") and supporting systems and related IT support services, and we expect to complete such transition by the end of fiscal 2016. We have engaged third party service providers to assume tax, accounts payable, collections as well as information technology support functions from Kellwood and are in the process of integrating the service providers into our processes. The third party service providers may be unable to effectively replace the functions historically provided by Kellwood in a manner that meets our business needs. If we are unable to successfully implement these new systems, processes and functions, or fail to complete the transition of the remaining systems and functions from Kellwood in a timely manner or as planned, we may be forced to adopt more costly, less capable alternatives to replace those systems and functions and our business and results of operations, cash flows and liquidity may be materially and adversely affected.

[Emphasis added]

18.     On December 8, 2016, Vince issued a press entitled, "Vince Holding Corp. Reports Third Quarter 2016 Results," reporting unaudited results for the third quarter of fiscal 2016 ended October 29, 2016, stating in pertinent part:

> **2016 Outlook**
>
> For fiscal 2016:
>
> - Total net sales are now expected to be between $280 million and $290 million, including revenues from six new retail stores and a comparable sales decline inclusive of ecommerce sales in the mid-teens;
> - Gross margin is expected to be between 45.9% and 46.6%.
> - SG&A is now expected to be between $128 million and $130 million;
> - Interest expense is now expected to be between $3.6 million and $3.8 million;
> - We now expect earnings per share to be between $0.00 and a loss of $0.07. Note that the EPS guidance continues to reflect a diluted share count of approximately 46.6 million, which includes the impact of 11.8 million shares issued in connection with the rights offering; and
> - Capital expenditures are now expected to be approximately $16.5 million due to an increase in the Company's IT migration investment.

19.     On December 8, 2016, Vince held an earnings call with investors to discuss its third quarter 2016 results, wherein Defendants Hoffman and Stefko stated that:

> **Brendan Hoffman**
> While overall our third quarter sales came in below our expectations, **we are pleased with the progress we're making as we continue through a transitional phase at Vince**.
>
> \*     \*     \*
>
> **David Stefko**
> As we have previously discussed, we undertook an IT migration project to make us completely independent from Kellwood. Given the complexity of this project, as we have brought in new software platforms and hardware configurations that will manage every facet of the business, it has taken us longer to complete this transition than we initially projected. **As we speak, we are executing a final phase of this new platform**. And therefore expect that, most of the costs associated with this migration will be behind us after this year.
>
> [Emphasis added]

7

20. On January 9, 2017, Vince issued a press entitled, "Vince Holding Corp. Provides Update on Full Year Outlook," stating in pertinent part:

**Vince Holding Corp. Provides Update on Full Year Outlook**

January 09, 2017 04:15 PM Eastern Standard Time

NEW YORK--(BUSINESS WIRE)--Vince Holding Corp. (NYSE: VNCE), a leading global luxury apparel and accessories brand ("Vince" or the "Company"), today announced that sales and EPS results for the full year are now expected to come in at or below the low end of the Company's previously stated guidance as of December 8, 2016, due to an anticipated shift in the timing of a larger than planned portion of the Spring collection shipments from late January to early February, as well as softer than expected sales performance during the holiday season.

Brendan Hoffman, Chief Executive Officer, commented, "Despite a solid Black Friday week and improved trends towards the end of December, sales for the holiday season were softer than we anticipated. That said, for the holiday season, while direct-to-consumer segment sales results were near the low end of our guidance range, they were better than sell-through performance in the wholesale segment. Overall, we continue to gain valuable insights from our retail team and wholesale partners. We are also encouraged by the favorable response to our return to the style and quality that was the cornerstone of the Vince brand at its inception. We remain committed to driving market share gains within the wholesale channel, expanding our direct-to-consumer business and growing our international presence over the long-term."

21. The statements referenced in ¶¶ 16 - 20 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) during the transition from legacy Kellwood systems, Vince experienced issues related to integrating its new ERP system; and (2) as a result, Defendants' statements about the Company's business, operations and prospects were materially false and misleading and/or lacked a reasonable bases at all relevant times.

**The Truth Emerges**

22. On April 14, 2017, Vince filed a Notification of Late Filing on Form 12b-25 with the SEC disclosing that the filing of its Form 10-K for fiscal year 2016 with the SEC will be delayed due to Kellwood transition and the integration of the Company's new ERP System with its internal business processes and third-party systems, stating in pertinent part:

> **In December 2016, the Company completed the final phase of such transition, which included the implementation of the new enterprise resource planning and supporting systems (collectively, the "ERP System"). Following such implementation, the Company has experienced significant difficulties in successfully integrating the ERP System with its internal business processes as well as other third-party systems, requiring the Company to expend extra resources and time to address those issues**. The Company is also conducting additional procedures and processes, to ensure that the financial statements to be included in the Annual Report present fairly, in all material respects, the financial position, results of operations and cash flows of the Company and its subsidiaries for the periods presented. These matters have resulted in unanticipated delays in compiling financial reports and other data that are necessary in preparing and completing the financial statements required for the Annual Report.
>
> In addition, although the Company has not concluded its assessment of the effectiveness of its internal controls over financial reporting as of January 28, 2017, it believes that the transition and implementation described above will result in one or more material weaknesses in internal controls.
>
> [Emphasis added].

23. On this news, shares of Vince fell $0.25 per share or over 19% from its previous closing price to close at $1.05 per share on April 17, 2017, damaging investors.

24. On April 28, 2017, before market hours, Vince published a press entitled, "Vince Holding Corp. Reports Fourth Quarter and Fiscal Year 2016 Results," revealing that "[r]esults for the fourth quarter came in below our expectations, due primarily to challenges related to our systems conversion," stating in pertinent part:

> ***For the fourth quarter ended January 28, 2017:***

9

- Net sales decreased 21.9% to $63.9 million from $81.8 million in the fourth quarter of fiscal 2015.
- Operating loss was $62.9 million, which includes $55.1 million in non-cash long-lived asset impairment charges, of which $53.1 million were related to goodwill and the tradename intangible asset and $2.1 million were related to property and equipment of certain retail stores, compared to operating income of $4.8 million for the fourth quarter of fiscal 2015. In the fourth quarter of fiscal 2015, the Company recorded a benefit from the recovery on the inventory write-down taken in the second quarter of fiscal 2015 and the favorable adjustment to management transition costs, totaling $2.5 million.
- Net loss was $162.1 million, or $3.28 per share, including an estimated impact of $3.13 per share related to the aforementioned non-cash long-lived asset impairment charges as well as the valuation allowance recorded against the Company's deferred tax assets (please refer to Exhibit 3). This compares to net income of $1.8 million, or $0.05 per diluted share, for the fourth quarter of fiscal 2015, which included a $0.04 per diluted share benefit from the recovery on the inventory write-down and favorable adjustment to management transition costs.
- The Company ended the fourth quarter with 54 company-operated stores.

Brendan Hoffman, Chief Executive Officer, commented, "Results for the fourth quarter came in below our expectations, due primarily to challenges related to our systems conversion, which led to delayed shipments of Spring product and off-price shipments, as well as lower than expected performance in our pre-Spring collection.

* * *

*For the fiscal year ended January 28, 2017:*

- Net sales decreased 11.3% to $268.2 million from $302.5 million during fiscal year 2015. Wholesale segment net sales decreased 15.5% to $170.1 million and direct-to-consumer segment net sales decreased 3.1% to $98.1 million compared to fiscal year 2015. Comparable store sales decreased 16.2% compared to the prior year period, including e-commerce sales.
- Net loss was $162.7 million, or $3.50 per share, which includes an estimated impact of $3.33 per share related to the non-cash long-lived asset impairment charges as well as the valuation allowance recorded against the Company's deferred tax assets (please refer to Exhibit 3). This compares to net income of $5.1 million, or $0.14 per diluted share, in fiscal 2015, which includes a $7.7 million, or $0.20 per share, net charge associated with the write-down of excess inventory and aged product to expected net realizable value incurred in the second quarter and subsequent recovery of inventory in each of the third and fourth quarters, as well as net management transition costs.

25. On April 28, 2017 at 9:00 a.m. Eastern Standard Time, Vince held an earnings call with investors to discuss its fourth quarter and annual fiscal 2016 results, wherein Defendants Hoffman and Stefko stated that:

> **Brendan Hoffman**
> Finally, we migrated to a new IT infrastructure and a new warehouse as we separated from Kellwood systems. **Unfortunately, the complex systems transition was met with a number of challenges, including integration and process issues leading to a reduction in visibility in our financial reporting systems and causing a delay in our 10-K filing. This also led to material weaknesses in our internal controls which Dave will discuss in more detail.**
>
> While we completed the implementation of these systems, which ran across several functions of our business, **the integration and process issues also caused delayed shipments, particularly in the off-price channel and some order cancellations as well as returns, primarily for pre-spring product.**
>
> \* \* \*
>
> **Brendan Hoffman**
> **So, as Dave said a lot of the constraint was due to our systems in last three-months not getting a little bit more product out there**, but we feel that we will be able to get a normalized flow out there that best calibrate the business for us and for them.
>
> \* \* \*
>
> **David Stefko**
> **During the transition from legacy Kellwood systems, we experienced some issues related to integrating our new ERP system** with our internal business processes and third-party systems. Ultimately, we believe these systems will serve to increase our operational efficiency.
>
> \* \* \*
>
> **David Stefko**
> **…as Brendan mentioned, our fourth quarter topline sales results did not meet our expectations, primarily due to the challenges we encountered as a result of our complex systems conversion** as well as lower than expected performance of our pre-spring collection and the general difficulties in the apparel industry.
>
> [Emphasis added]

11

26. On this news, shares of Vince fell $0.35 per share or over 25% from its previous closing price to close at $1.00 per share on April 28, 2017, damaging investors.

27. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

28. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Vince securities publicly traded on NYSE during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

29. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Vince securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

31. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

32. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a.    whether the federal securities laws were violated by Defendants' acts as alleged herein;

    b.    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

    c.    whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

    d.    whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

    e.    whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

    f.    whether the prices of Vince securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

    g.    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

33.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

34.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

    a.    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    b.    the omissions and misrepresentations were material;

    c.    Vince securities are traded in efficient markets;

    d.    the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

    e.    the Company traded on NYSE, and was covered by multiple analysts;

    f.    the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

    g.    Plaintiff and members of the Class purchased and/or sold Vince securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

35. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

36. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

37. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

38. This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

39. During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40. The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

15

engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Vince securities during the Class Period.

41. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

42. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

43. As a result of the foregoing, the market price of Vince securities were artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Vince securities during the Class

Period in purchasing Vince securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

44. Had Plaintiff and the other members of the Class been aware that the market price of Vince securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased Vince securities at the artificially inflated prices that they did, or at all.

45. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

46. By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of Vince securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

47. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

49. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the

Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

50. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Vince securities.

51. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complaint.

52. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 5, 2017                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Phillip Kim
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
275 Madison Ave., 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
          pkim@rosenlegal.com

Counsel for Plaintiff